Baldwin J.
The deed from Triplett to Carter not having been delivered to the clerk to be recorded, is void as against the creditors of Triplett; and cannot be set up against them in this suit, brought more than eight months after the execution of the deed, though proved to have been accidentally lost in the attempt to transmit it to the clerk’s office. Whether equity would have set up the deed in a suit brought against the creditors within the eight months, is a question that does not arise in this case.
But though the statute avoids the deed as against the creditors of the grantor, it does not affect the pre-existing equitable estate of Carter, acquired by purchase from him. The judgment and decree in question were obtained at the January term 1835; and Carter was then the owner of the land: he bought it, as appears from the articles of agreement, in February 1834, received the possession, and had paid up a considerable part of the purchase money. Nothing was wanting but a valid conveyance of the legal title, and that he would have had, but for the intervention of the statute; a perfect deed having been made to him before the commence *411 ment of the term, which, however, by reason of its accidental loss, was not delivered to the clerk for recordation.
• • If no deed had been made at all, it is clear that Carier’s title would have been good in equity, though not at law, against creditors of Triplett by judgments subsequently recovered. The elfect of the statute was to render the deed quoad the creditors of the grantor a mere nullity, and so to leave the subject precisely in the same situation as if no deed had been made or attempted.
It cannot be doubted that a fair purchaser of the equitable estate has a right to hold it against creditors of the vendor who have not previously recovered judgments. He cannot do so, it is true, at law, which only notices the legal title, but he can in equity, which notices, protects and enforces the equitable title. A vendor who has not conveyed the legal title is a trustee for him, and equity will enforce the trust not only against the vendor, but all persons claiming under him, unless they can shew superior equity, or equal equity, with the advantage of having obtained the legal title. A creditor of the vendor who has not recovered judgment against him, until after his sale of the equitable estate, to a bona fide purchaser for a valuable consideration, has not equal equity; for both law and equity recognize that dominion over property which enables the owner to sell it, though indebted at the time: at law the sale is accomplished by a conveyance of the legal title, and in equity by the agreement to convey it.
Sugdcn, in his Law of Vendors, says: “If any judgments should be entered up after the purchase, being on adequate consideration, is actually paid, equity would relieve the purchaser against the judgments, notwithstanding that they were entered up previously to the execution of the conveyance; the vendor being in equity only a trustee for the purchaser, and a judgment being *412 merely a general and not a specfic lien on the land: and this equity prevails, whether the judgment creditor had or had not notice of the contract.” Sng. Vend. Ameri. edit, of 1836, from 9th Lond. edit. p. 613.
In Burgh v. Francis, cited 1 P. Wms. 279, there was a defective mortgage in fee for £ 500, it being made by way of feoffment without livery, and after this the mortgagor confessed a judgment to a third person ; nevertheless the estate being specifically bound by the mortgage, it was decreed that the mortgage should be preferred to the judgment; though at law the former being in strictness void, the judgment creditor would have taken place.
In Taylor v. Wheeler, 2 Vern. R. 564, one seized in fee of a copyhold made a mortgage thereof, but the surrender was not presented at the next Court, by means whereof it became in law void, and afterwards the mortgagor, who had all along continued in possession, became bankrupt; yet it was decreed that this mortgage, though void at law, was, notwithstanding, an equitable lien upon the copyhold estate, and should be made good in equity, and bind the assignees of the commission of bankruptcy and all creditors.
And in Finch v. Earl of Winchelsea, 1 P. Wms. 282, Lord Chancellor Cowper held, that articles made for a valuable and somewhat adequate consideration, and the money paid, will in equity bind the estate, and prevail against any judgment creditor mesne betwixt the articles and the conveyance.
The foregoing authorities, if any be requisite, are more than sufficient to shew that a good equitable title acquired by a purchaser, is paramount in equity to subsequent judgments of the vendor’s creditors recovered before the vendee has obtained a conveyance of the legal title, or though he has obtained one that is void in law.
If this were not so, then a purchaser would not be safe in relying upon an executory contract, but would *413 be obliged to obtain a conveyance of the legal title at the moment of his purchase. The extensive mischief of such a doctrine must be obvious, when we consider that the conveyance of the legal title is often delayed for years, and not (infrequently from causes beyond the control of the parties, for example, a tedious chancery suit; and that the creditor of an insolvent vendor recovering judgments against him would be enabled to reach the property in the hands of his vendee, however long and notorious his possession under a contract fully performed on his part.
No one supposes that our registry law requires, in relation to bargains, sales and other conveyances of lands, tenements or hereditaments, the recordation of the ex-ecutory contract. By an amendment introduced at the revisal of 1819, (1 Rev. Code, p. 365, § 13,) authority is given to have title bonds and other written contracts in relation to lands admitted to record, in like manner as deeds for the conveyance of land, and when so admitted they are notice to subsequent purchasers of the existence of such bond or contract; but that is the only effect of the provision, which does not avoid them either as to purchasers or creditors if not admitted to record.
It is the deed of conveyance, therefore, and that only, which the law avoids for want of recordation, and the executory contract is left untouched by the statute in the slightest degree. No deed of conveyance is necessary to confirm its validity, and how an abortive attempt to obtain a valid conveyance can destroy the pre-existing equitable title is beyond my comprehension: nor can I conceive what merger there can be, in regard to creditors, of the equitable estate in the legal title, by force of a deed which as to creditors is a blank piece of paper.
The policy of the statute in avoiding, as far as it does, for want of recordation, those instruments which it requires to be recorded, is obvious; that is necessary to enforce its requirement; and it would have been ab *414 surd to avoid those contracts which it does not require to be .recorded. The effect of the provision avoiding the unrecorded deed is to deprive the vendee of the advantage he would otherwise obtain from it, and so to prevent him from obstructing creditors and subsequent purchasers in their pursuit of the property at law, or standing by force of the conveyance on higher ground in equity; and thus leaving the equitable right to be decided at the instance of the one or the other party to the controversy, in a Court of Equity, according to the principles of equity and good conscience, unshackled by the formal title.
It is indeed questionable in the present case, whether either the judgment or decree, recovered against Triplett after Carter's purchase of the land, could have been enforced against it at law by the levy of an elegit. Carter was then in possession under a good equitable title, had paid up all the purchase money then due, and by the terms of the articles was entitled to a conveyance : so that by the principles of equity, though Triplett still held the legal title, he was only a trustee for Carter. Now by our statute regulating conveyances, (1 Rev. Code, p. 370, § 30,) “estates of every kind holden or possessed in trust shall be subject to like debts and charges of the persons to whose use or to whose benefit they were or shall be respectively holden or possessed, as they would have been subject to, if those persons had owned the like interest in the things holden or possessed as they own or shall own in the uses or trusts thereof.” If this enactment should be construed to warrant elegits upon judgments against Carter recovered by his creditors, it would be remarkable if Triplett's creditors could also subject the land by elegits against him; and if so, how would the question of priority between these two sets of creditors be determined ?
*415 However this may be, I think it clear that Carter’s creditors by judgment could have subjected his equitable estate in a Court of Equity, to the exclusion of Triplett’s creditors; for Courts of Equity will enforce the security of a judgment creditor against the equitable interest in the freehold estate of his debtor, treating the judgment as in the nature of a lien upon such equitable interest. 2 Story’s Eq. 1216, b. And as the relief to Carter’s creditors would of course be founded upon his equitable ownership, the same reason would equally entitle him to the interposition of a Court of Equity in his behalf. In Prior, &c. v. Penpraze, 2 Eng. Ex. R. 46, it was held that a purchaser may maintain a bill in equity, to restrain a creditor of the vendor from proceeding by scire facias to revive a judgment, in order to obtain execution against the estate that was sold before the judgment, and ineffectually conveyed to the purchaser, whereby the legal estate descended since the date of the judgment, to the heir at law.
It would be repugnant to the principles of natural justice to subject property to the debts of the formal instead of the substantial owner; and a most absurd exercise of legislative power to impose a forfeiture upon the latter, not for his failure to obtain a conveyance of the legal title, but for his failure to have it registered after having obtained it, and though the want of registration renders it a mere nullity.
I consider a decision of this Court in Coleman v. Cocke, 6 Rand. 618, 643, an authority in point. In that case, a father purchased a tract of land, but was not to have the legal title till the purchase money should be paid or secured : he held it as owner for some years, and being involved in debt made a fraudulent transfer of it to his son, whom he placed in possession, and to whom he directed his vendor to make a deed, which was accordingly done. The son afterwards sold the land to a bona fide purchaser for a valuable consideration : but *416 neither the deed to the son, nor his deed to the purchaser was ever recorded. In a suit brought in equity by a creditor of the father, who had recovered a decree agajnst ^im after the sale made by the son, it was held ^at the purchaser had a right to stand upon the same ground as if the son had given to the father a fair valuable consideration for the transfer of his interest in the land, in which case the transfer would have been valid without deed, and was not necessarily to be recorded to make it available against the father’s creditors; and if no deed had been made to the son, a bona Jide purchaser of the equitable interest from him would have had a better right to call for a conveyance of the legal title than any creditor of the father getting a judgment against him after the transfer of his equitable right to the son ; and so if the deed were held void for want of recordation, it would avail the creditor nothing. I do not perceive how the case can be distinguished in principle from the one before us.
I learn it is supposed by some that the decision of this Court in M ’Clure v. Thistle’s ex’ors, 2 Gratt. 182, gives countenance to the idea, that though a purchaser has by an executory contract acquired a good equitable title to land, which, until he receives a conveyance of the legal title from the vendor, is exempt in equity from intervening judgments against the latter, yet that such equitable title will avail him nothing after he has obtained such conveyance against judgments subsequently recovered, unless the deed has been duly recorded. But it was not the intention of the Court to decide any such proposition, though the reported case without close examination, may be liable to misconstruction, from the reporter’s attention not having been drawn by the Court to the reason for its general affirmance of the Chancellor’s decree. The case was one in which there was no evidence of an executory contract or possession prior to the deed, nor was any asserted by the defendant’s an *417 stver: he relied simply upon his deed, his possession under it, and his payment of the purchase money. I recollect distinctly that two of the Judges who sat in « . the cause, (the President and myself,) were decidedly of opinion that if it had appeared from the record, that the defendant, prior to the execution of the deed had acquired by his purchase a good equitable title, he ought to be protected against the judgment; and we concurred in the affirmance of the decree merely upon the ground that there was no evidence of the defendant’s right other than the deed of conveyance.
I think, therefore, that the judgment of the appellants upon the forthcoming bond, and the decree in favour of Ellzra, to a moiety of which Grubbs’ adm’r seeks substitution cannot in equity affect the land in question in the hands of the appellee Carter.
But they do affect the equitable interest of Triplett in the land, arising out of the balance of purchase money due him upon his sale to Carter, for which he had in the first instance the vendor’s lien, and which was afterwards secured by the conveyance of the land to a trustee. At law, it is true, such an interest cannot be extended upon an elegit; but for that very reason relief may be had in equity, which gives a lien upon it in favour of judgment creditors by analogy to the lien at law upon the legal estate ; and amongst several judgment creditors adopts the legal rule of priorities according to the order of time. Coutts v. Walker, 2 Leigh 268; Tinsley v. Anderson, 3 Call 329; 2 Story’s Eq. 1216 a. The equitable liens of the judgment and decree upon that interest of Triplett must therefore in this case prevail over the after assignment obtained by the appellants from him of Carter’s bond for the balance of purchase money. And we have to decide whether the judgment or the decree is to prevail, unless to be paid ratably as decided by the Chancellor.
*418 The judgment and the decree were rendered at the satne term °f the same Court, the former on the 27th of January and the latter on the 7th of' February: the judgment therefore has priority of time, unless both hav-e relation to the first day of the term, which commenced on the 26th of January. Gilbert on Executions, p. 53. Equity follows the law in the priority gained by relation to the first day of the term; Coutts v. Walker, ubi sup.: as to the judgment the relation cannot be questioned; but as to the decree an objection arises out of the fact, that the cause in which it was rendered was not in a condition to be heard on the first day of the term. The suit at the commencement of the term stood on the deferred issue docket, and involved the settlement of an executorial account, which had been referred by an interlocutory order made in the year 1833 to a commissioner, whose report was not returned until the 29th of January, after which the cause was set for hearing by consent, to wit, on the 7th of February, and the decree rendered on that day.
The fiction of law which gives a judgment relation to the first day of the term is general, but not universal. It applies to all cases in which the judgment might have been rendered on that day, but not to a case in which it could not have been then rendered. It applied in the English practice to judgments confessed under warrants of attorney in vacation, which were treated as judgments of the next preceding term, and might have been confessed on the first as well as any subsequent day of the term. But in Wynne v. Wynne, 1 Wils. R. 42, it was decided to be inapplicable to a case of common recovery where the record shewed the precipe was returned to the first day of the term, the tenant appeared and vouched to warranty, and a summons ad warrantizandum was awarded to a future day of the term, to which the vouchee appeared by attorney: but in fact the vouchee had died before the return day of *419 the summons. And the Court held that the plaintiff in error was not estopped to assign the death of the vouchee to have been before judgment; for the writ of summons was the first process as to the vouchee, and the record shewing that he appeared to it on the return of the summons, by attorney, the Court could not intend any other appearance, and so the judgment could not have been rendered on the first day of the term. So in Swann v. Broome, 3 Burr. 1595, also a writ of error to a common recovery, the recovery was held to be bad ; because no judgment could be supposed to be given before the return of the writ of summons, which appeared by the record to be in the term; that it could relate only to the essoign day of the writ of summons, which was upon a Sunday, dies non juridicus; on which Sunday the tenant in tail died.
In Coutts v. Walker, 2 Leigh 268, the Judges concurred in the opinion that these cases were founded upon good reasons, which might very well apply to all cases in which it appeared that the plaintiff’s cause could, not be matured for judgment on the first day of the term.
The present case is stronger against relation to the first day of the term, than that of a judgment rendered in a cause after its continuance till another day in the same term; and yet Holt, Ch. J. said that such a case •would not fall within the general rule, 3 Salk. 212; and in Miller v. Bradley, 8 Mod. R. 189, the Court held that the judgment in that case did relate to the first day, because no continuance appeared on the record; and admitted that if there had been such an entry there could be no relation.
If the decree as well as the judgment had relation to the first day of the term, the decision of the Chancellor would have been correct, in directing the judgment and moiety of the decree to be satisfied pro rata out of the equitable fund in question: but that not being so, he ought, I think, to have postponed the claim under the *420 decree to the judgment. If he had done so, the result would be to leave part of the decree unsatisfied.
As the appellants are entitled to full satisfaction out of the equitable fund, I deem it unnecessary to enquire whether, under the pleadings and evidence, the failure of the appellants to have the faulty forthcoming bond quashed at law, instead of taking judgment upon it, and the other circumstances of the case, it be correct as contended by their counsel, that they have a lien upon the land itself that ought to be enforced in equity, by virtue of their original judgment, which seems to have been recovered prior to Carter’s purchase.
It may be supposed that, upon the concession of such a lien by the original judgment, Grubbs’ adm’r would have a right to require the appellants to resort to it, in order that he may obtain full satisfaction out of the equitable fund. A moment’s reflection, however, will serve to shew that the appellants cannot be required, nor permitted, to resort to such a lien; because Carter has an equity demanding the application of the equitable fund to the discharge of the original judgment, which cannot be resisted, either by the appellants or by Grubbs’ adm’r.
The creditors of Triplett can resort to the land purchased from him by Carter only by treating it as the property of their debtor; and this is equally true in regard to the purchase money. If the creditors disaffirm the contract by subjecting the land, then they thereby recognize the purchaser’s right to reclaim the consideration he has contracted to pay for it: if they affirm it, by subjecting the consideration, then they necessarily release the land. There is, therefore, an inherent and irresistible equity on the part of Carter to indemnify himself out of the purchase money in his hands, for any loss occasioned him by the lien upon the land of the original judgment; and this equity is paramount to any claim against the purchase money, whether on the part of the appellants, or of Grubbs’ adm’r.
*421 My opinion is that the decree of the Circuit Court Í3 - . . erroneous m admitting Grubbs’ adm’r into a participation, pro rata, of the equitable fund with the appellants, . instead of postponing the former to the latter; ana that there is no other error in the decree to the prejudice of the appellants.